IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 6:14-cr-00008 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SUSANNE HELBIG, | ) | By: Norman K. Moon |
|     Petitioner. | ) | United States District Judge |

    Petitioner Susanne Helbig, a federal inmate proceeding *pro se*, filed a motion and an amended motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging her 96-month sentence based on ineffective assistance of counsel claims and claims of procedural error following a guilty plea. The government filed a motion to dismiss and Helbig responded. Accordingly, this matter is ripe for consideration. I conclude that Helbig has not stated any meritorious grounds for relief. Therefore, I will grant the government's motion to dismiss.

**I**

    On May 22, 2014, a grand jury returned a fifteen-count indictment against Helbig charging her with: conspiracy to engage in mortgage fraud, in violation of 18 U.S.C. § 1349 ("Count One"); aiding, abetting and knowingly executing and attempting to execute schemes to defraud federally insured financial institutions, in violation of 18 U.S.C. § 1344 ("Counts Two - Eight"); knowingly making false statements or reports for the purpose of obtaining loans from a federally insured financial institution, in violation of 18 U.S.C. § 1014 ("Counts Nine - Fourteen"); and willfully making false statements on a tax return, in violation of 26 U.S.C. § 7206(1) ("Count Fifteen"). At her arraignment, Helbig stated that she had received a copy of the indictment and understood the nature of the charges against her. (Arraigm't Hr'g Tr. at 6-7, ECF No. 108).

Helbig was appointed counsel who engaged in plea negotiations with the government. Helbig pleaded guilty to Count One and Count Fifteen, pursuant to a written plea agreement. The government agreed to dismiss the remaining counts of the indictment. The plea was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and called for an agreed sentencing range of 51 - 121 months' incarceration and $10,620,121.22 in restitution. (Plea Agmt. at 1, 5, ECF No. 49). In the plea agreement Helbig stipulated that, for purposes of calculating the sentencing guidelines on Count 1, the loss amount was between $7 million and $20 million. (*Id*. at 4). Helbig agreed that a sentence of imprisonment within the stipulated range was "a reasonable sentence" and recognized that the government would seek a sentence at the high end of the range and she would seek a sentence at the low end of the range. (*Id*. at 1). Pursuant to the plea agreement, Helbig agreed to waive her right to appeal and to collaterally attack her conviction and sentence other than to bring claims for ineffective assistance of counsel. (*Id*. at 9). The plea agreement also provided that if Helbig was not an American citizen, she "may be subject to deportation from the United States as a result of [her] conviction." (*Id*. at 10). Helbig affirmed that she had carefully reviewed the agreement, and was voluntarily entering into it of her own free will. (*Id*. at 14).

At the guilty plea hearing, Helbig affirmed that she had received a copy of the indictment and had had ample time to consult with counsel before signing the plea agreement. (Plea Hr'g Tr. 3, ECF No. 483). Helbig stated that she understood that she was under oath and that if she answered questions falsely, her statements could be used against her in another proceeding. (*Id*. at 4). She affirmed that she was "fully satisfied with the counsel, representation and advice given" to her by her lawyer. (*Id*. at 4). The government summarized the terms of the plea agreement. (*Id*. at 6-10). It noted that in order to obtain a conviction on Count One, it would

have to prove that Helbig knowingly and willfully entered into an agreement to commit bank fraud, a conviction which carries a maximum term of imprisonment of 30 years. On Count Fifteen, the government stated that it would have to show that Helbig signed and filed tax returns under penalty of perjury that she knew to contain false statements, a conviction which carries a maximum term of imprisonment of three years. (*Id*. at 6-7). Helbig affirmed that she understood what the government must prove to be found guilty of the two counts to which she pleaded guilty, and the range of punishment she faced. (*Id*. at 7). The government further noted that the plea agreement was entered into under Rule 11(c)(1)(C), that the parties had agreed to a sentencing range of 51 to 121 months, and that if accepted, the plea agreement would supersede any guidelines calculation. (*Id*. at 10). Helbig affirmed that she had read and understood the plea agreement before signing it. (*Id*. at 12).

Helbig affirmed that no one had made any promises other than those in the plea agreement to induce her to plead guilty and that no one had "attempted to force [her] to plead guilty." (*Id*. at 12). She stated that she understood that by pleading guilty, she gave up her right to appeal and to collaterally attack her sentence. (*Id.* at 12-13).

The prosecutor summarized the evidence against Helbig: in 2006 and 2007 Helbig was an owner of a local construction company. She started paying kickbacks to mortgage brokers and strawbuyers to obtain approximately 30 mortgage and construction loans from banks and mortgage lenders based on false information. (*Id*. at 13). Helbig defaulted on the loan payments and the banks suffered approximately $10.5 million in losses. (*Id*. at 18). In those same years, Helbig filed tax returns under penalty of perjury that did not accurately reflect her income from the construction company. (*Id*. at 18-19). At the end of the hearing, I found that Helbig was

3

fully competent and capable of entering an informed plea and that her guilty plea was knowingly and voluntarily made. (*Id.* at 20).

The probation office prepared a Presentence Investigation Report ("PSR") before sentencing. The PSR recommended a total offense level of 32, which included a 20-level enhancement because the loss amount was between $7 million and $20 million, a two-level enhancement because the offense involved the use of sophisticated means, a two-level enhancement because Helbig received more than $1 million in gross receipts from a single financial institution, and a four-level enhancement because she was an organizer or leader of the criminal activity. (PSR ¶¶ 37, 38, 39, 41, 52, ECF No. 72). Helbig had a criminal history category of I, resulting in a guideline imprisonment range of 121 to 151 months' incarceration. (*Id*. at ¶ 70). Both the government and the defense objected to provisions of the PSR.

Defense counsel objected to the PSR's classification of Helbig as "head[ing]" the conspiracy. He argued that it was a "joint venture" between Helbig and two other individuals, although counsel did note that Helbig had a leadership role with regard to the strawbuyers. (*Id*. at 23). Defense counsel argued that Helbig also did not "recruit" loan officers to participate in the conspiracy. In addition defense counsel objected to an obstruction of justice enhancement, which was subsequently removed from the PSR. (*Id*. at 25).

Defense counsel filed an extensive sentencing memorandum. In it, he argued that I should sentence Helbig to 51 months' incarceration as a fair and reasonable sentence and to avoid sentencing disparities. (Sent. Mem. at 12, ECF No. 54). The government also filed a sentencing memorandum, arguing for a sentence of 121 months because Helbig was a leader in the conspiracy and actively participated in many aspects of the scheme. (Gov't Sent. Mem. at 26, ECF No. 55).

4

Case 6:14-cr-00008-NKM-RSB   Document 114   Filed 12/13/16   Page 4 of 14   Pageid#: 960

At the sentencing hearing, Helbig stated that she had had an opportunity to review the PSR with counsel. (Sent. Hr'g Tr. 2, ECF No. 84). The government, in accordance with its sentencing memorandum, requested a sentence of 121 months. (*Id*. at 8). Defense counsel did not put on any evidence, but argued for a sentence of 51 months because co-conspirators who were equally, if not more culpable, had received sentences of 36 months. (Id. at 11-12). Helbig stated that she was "horrified, deeply saddened, and eternally remorseful for [her] conduct in this case," that her actions were "legally and morally wrong." (*Id*. at 18). I sentenced Helbig to 96 months' incarceration and required her to pay $10,461,677.17 in restitution. (Judgment at 2, 5). She filed a direct appeal, but then moved to voluntarily dismiss it, which the Fourth Circuit granted. (Order at 1, ECF No. 91).

In her § 2255 motion, Helbig alleges that counsel provided ineffective assistance of counsel by: (1) failing to investigate the claims against her and prepare a defense; (2) failing to inform her of the charges against her, and coercing her to plead guilty; (3) colluding with the government to present false evidence; (4) failing to prepare for sentencing and challenge the restitution calculation. (§ 2255 motion at 8-11, ECF No. 103). She also argues in an amended § 2255 motion that I failed to properly advise her of her rights at her guilty plea hearing in accordance with Rule 11 of the Federal Rules of Criminal Procedure. (Amend. § 2255 motion at 3-7, ECF No. 104-1).

II

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28

U.S.C. § 2255. Helbig bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### III

*A. Ineffective Assistance of Counsel Claims*

Criminal defendants are entitled to "the effective assistance of competent counsel," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and the proper vehicle for raising an ineffective assistance of counsel claim is by filing a § 2255 motion. *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010). However, ineffective assistance claims are not lightly granted; "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Accordingly, in order to establish a viable claim of ineffective assistance of counsel, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and establishing prejudice due to counsel's alleged deficient performance. *Id.* at 687. When considering the reasonableness prong of *Strickland*, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Gray v. Branker*, 529 F.3d 220, 228–29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 690.

To satisfy the prejudice prong of *Stickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694. A defendant who has pleaded guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that he would not have

6

pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Helbig argues that her counsel provided ineffective assistance of counsel at every step of the proceedings against her.

### 1. Failure to Mount A Defense

First, Helbig argues that counsel failed to mount a defense. This claim involves many allegations, including counsel's failure to investigate, review discovery, consult experts, subpoena records, and object to the government's evidence. These claims lack merit.

Courts must afford counsel a "wide latitude in deciding how best to represent a client." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). In particular, deference must be given to counsel's tactical decisions. *Id.* at 6. Helbig claims that she provided the government with documents, some of which are now missing, and which she could have used to prove her innocence. However, she fails to explain how the missing documents would have established her innocence. Similarly, although Helbig suggests that counsel could have subpoenaed documents from her business partner and a business lawyer, she does not explain what type of exculpatory evidence she expected to find. General allegations that counsel failed to fully investigate are insufficient to support a finding of error. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (noting that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court" (internal quotation marks omitted)); *see also Nickerson v. Lee,* 971 F.2d 1125, 1136 (4th Cir. 1992) (noting that conclusory allegations that counsel failed adequately to investigate, without factual support, are insufficient to raise a constitutional issue or require an evidentiary hearing), *overruled on other grounds by Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). Moreover, a defendant may not use discovery
7

to go on a "fishing expedition" in search of evidence to support an imagined and fanciful claim." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990). Accordingly, counsel did not provide ineffective assistance for failing to make such document requests. *Strickland*, 466 U.S. at 687.

Helbig also argues that counsel failed to consult experts, such as a tax expert "in order to disprove any tax liability" and an information technology expert to investigate the metadata from various emails sent. (§ 2255 Mot. at 6, ECF No. 103-1). Counsel did provide some hard drives to the information technology employee in his office. (§ 2255 Mot. Ex. G, ECF No. 103-4). In addition, counsel gave Helbig the option of hiring her own experts, which Helbig declined to do. (*Id*). Moreover, Helbig does not explain what she expects these experts to have found or why they would have been beneficial to her case. *Dyess*, 730 F.3d at 359. Accordingly, she cannot establish that her counsel provided deficient representation by failing to consult with experts. *Strickland*, 466 U.S. at 689 (noting that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

In addition, Helbig argues that counsel failed to review or challenge the government's evidence. This argument is belied by the record. Counsel's office spent significant time reviewing the documents pertinent to the case, including financial documents, ledgers and checks. (§ 2255 Mot. Ex. B, ECF No. 103-4; Exs. P-R ECF No. 103-5). However, counsel had grave concerns about the evidence against Helbig and advised Helbig to accept a plea agreement. (Id. Exs. P, S ECF No. 103-5). Counsel has a duty to "advocate the defendant's cause" but that also includes informing the defendant of the strengths and weaknesses of the defendant's case. *Strickland*, 466 U.S. at 688. The fact that counsel's office reviewed the documents and Helbig cannot point, with specificity, to evidence that counsel should have challenged, establishes that

counsel acted appropriately as an advocate with regard to challenging the government's evidence. Helbig cannot establish deficient performance or prejudice. *Strickland*, 466 U.S. at 687.

### 2. Failure to Explain Charges Against Her, Refusal to Go to Trial, and Coercing Her to Plead Guilty

Helbig also argues that counsel failed to explain the charges against her, refused to go to trial, and coerced her to plead guilty. These claims are directly contradicted by Helbig's statements, under oath, at her plea colloquy. She stated that she had received and reviewed the indictment, received and reviewed the plea agreement, and understood the charges against her and what the government would have to prove in order for a jury to find her guilty. (Plea Hr'g Tr. at 3-7, ECF No. 483). Also, Helbig affirmed that no one had made any promises other than those in the plea agreement to induce her to plead guilty and that no one had "attempted to force [her] to plead guilty." (*Id*. at 12). Finally, she stated that she was "fully satisfied" with counsel's representation. (*Id.* at 4).

A defendant's allegations that contradict statements made during a plea colloquy cannot support a finding of error. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (holding that absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false"). Accordingly, this claim lacks merit and does not support a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687.

### 3. Collusion in Prosecutorial Misconduct

Next, Helbig argues that counsel provided ineffective assistance of counsel by colluding in prosecutorial misconduct and perpetrating a fraud on the court. Her argument is essentially that counsel refused to defend her and instead aided the government in developing a case against

9

her. She further alleges that the government's case was based on "fraudulent" documents and statements. (§ 2255 Mot. at 10, ECF No. 103). Specifically, Helbig argues that the government purposefully presented to the sentencing court emails that had been altered by her co-conspirators. (§ 2255 Mem. at 29, ECF No. 103-1). This claim, too, lacks merit.

If the government intentionally makes misrepresentations that induce a defendant to plead guilty, such conduct may be grounds upon which to void the guilty plea. *United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013). This is particularly true if the evidence withheld or false statements made involved exculpatory evidence of actual innocence. *Id*. Helbig has not presented sufficient evidence that any impermissible government conduct occurred. She claims that emails that she supposedly wrote were, in fact, tampered with by her co-conspirators to make it seem like she had written them. But she makes no claim that either the government or her counsel were responsible for the alleged tampering. Moreover, Helbig has not presented any convincing evidence that her emails were sufficiently altered to establish that counsel and the prosecution should have recognized that they were fraudulent. Because Helbig has not established that the prosecution based its case on fraudulent documents and that her counsel was complicit in presenting fraudulent documents to the court, she cannot establish deficient representation or prejudice. *Strickland*, 466 U.S. at 687.

    4. <u>Sentencing Errors</u>

Finally, Helbig asserts that counsel erred because he neither informed her about the sentencing nor prepared for it. These claims, too, lack merit.

Helbig pleaded guilty pursuant to Rule 11(c)(1)(C) to an agreed upon sentencing range of 51 to 121 months' imprisonment. Prior to sentencing, counsel made numerous objections to the PSR, including challenging many of the enhancements to her base offense level. PSR at 23–26,

ECF No. 72). Counsel also filed an extensive sentencing memorandum in which he argued that Helbig should receive a 51-month sentence to avoid sentencing disparities with her coconspirators. (Sent. Mem. at 12, ECF No. 54). At the sentencing hearing, Helbig admitted her guilt in the fraud and stated that she had had an opportunity to review the PSR with counsel. (Sent. Hr'g Tr. at 2, ECF No. 84). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, her claim that she had not been informed about the sentencing and sentencing issues is unavailing.

The court sentenced Helbig to 96 months imprisonment, five years supervised release, and required her to pay $10,461,677.17 in restitution and $179,593.00 to the Internal Revenue Service for tax losses. (Judg. at 4, 5, ECF No. 65). Helbig claims that counsel provided deficient representation because he did not challenge the government's restitution calculation. She asserts that the government's restitution chart, submitted with its sentencing memorandum did "not represent the facts of the case" because it was "based on claims and submittals of the lenders, or in some case[s] based on very questionable submittals." (§ 2255 Mem. at 31, ECF No. 103-1). Helbig does not explain why she believes the submissions were "questionable." *Dyess*, 730 F.3d at 359. Moreover, in her plea agreement, Helbig agreed to make restitution in the amount of $10,620,121.22.[1] (Plea Agmt. at 5, ECF No. 49). She averred that she had had ample time to review and discuss the Plea Agreement with counsel. Helbig cannot successfully claim now that counsel did not adequately inform her about the restitution calculation. *Lemaster*, 403 F.3d at 221. Accordingly, Helbig cannot establish that counsel provided ineffective assistance of counsel by advising her to agree to the restitution stipulated in the plea agreement. *Strickland*, 466 U.S. at 687.

---

[1] The government reduced the amount of its restitution calculation after receiving updated loss amounts from victims. (Gov't Sent. Mem. at 17 n.2, ECF No. 55).

11

### B. Rule 11 Procedure Violations

In a supplemental memorandum, Helbig argues that I violated Rule 11 of the Federal Rules of Criminal Procedure by failing to inform her of the nature of the offenses for which she was charged. Specifically, Helbig argues that although I informed her of the elements of conspiracy, I did not review, in open court, the elements of the underlying bank fraud charge.

Helbig agreed in her plea agreement to waive all claims of collateral attack other than ineffective assistance of counsel claims. (Plea Agmt. at 9, ECF No. 49). Such waivers are binding on a defendant when they are knowingly and voluntarily made. *Lemaster*, 403 F.3d at 220. Accordingly, Helbig has waived the right to bring this claim.

But even if she hadn't waived her right to collaterally attack her conviction and sentence, this claim lacks merit. Rule 11 requires that before accepting a defendant's guilty plea, I must inform the defendant of various legal rights and issues, including "the nature of each charge to which the defendant is pleading guilty." Fed. R. Crim. P. 11(b)(1)(G). However, "the trial court is given a wide degree of discretion in deciding the best method to inform and ensure the defendant's understanding." *United States v. DeFusco*, 949 F.2d 114, 117 (4th Cir. 1991). Information regarding the nature of the charges may be provided before the plea hearing, and a defendant's representation that the defendant has reviewed the charges and understands them supports a finding of compliance with Rule 11. *Id*.

In this case, the record establishes that Helbig was adequately advised of the charges against her. In her plea agreement, Helbig represented that counsel had informed her of the nature and elements of the charges against her. (Plea Agmt. at 1, ECF No. 49). In addition, she admitted that she understood the charges she faced at her plea colloquy, after the government

12

explained that conspiracy required an agreement between two or more people to commit bank fraud and that the defendant knew the unlawful purpose of the plan and willfully joined it. (Rule 11 Hr'g at 6, ECF No. 83). Accordingly, she was adequately apprised of the charges against her. *DeFusco*, 949 F.2d at 117 (noting that in determining whether the requirements of Rule 11(b)(1)(G) have been satisfied, a court should consider whether the defendant had reviewed the indictment and plea agreement and stated that she understood the elements of the offense and nature of the charges).

Finally, Helbig asserts that I erred by failing to review, during the plea colloquy, the immigration ramifications she faced following entry of a guilty plea in accordance with Rule 11(b)(1)(O). Rule 11(b)(1)(O) requires that the court inform a defendant who is not a United States citizen that, if convicted, she may "be removed from the United States, denied citizenship, and denied admission to the United States in the future."

Assuming that failing to discuss Helbig's immigration status with her at the plea colloquy was erroneous, Helbig cannot establish prejudice. When a defendant "has actual notice of the[] possible immigration consequences" that the defendant faces by pleading guilty, any error in failing to inform the defendant of those consequences at the plea colloquy is harmless. *United States v. Anderson*, 624 F. App'x 106, 107 (4th Cir. 2015) (unpublished); *see also*, *United States v. Richards*, No. 15-2188-cr, 2016 WL 3854322, at *1; 2016 U.S. App. LEXIS 12754, at *3-4 (2d Cir. July 12, 2016) (concluding that the defendant could not establish error when he knew that he could face deportation proceedings by pleading guilty).

In this case, Helbig's plea agreement established that she could be deported if she was not a United States Citizen. (Plea Agmt. at 10, ECF No. 49). Moreover, she had conversations with her counsel regarding immigration consequences for pleading guilty, memorialized in emails

attached to her § 2255 petition. Counsel wrote an email to the government which stated that Helbig was "worried about deportation and wanted to know whether you will agree to recommend against it." (§ 2255 Mot. Ex. S, ECF No. 103-5). Counsel sent an email to Helbig stating that the government could not include such a provision in the plea agreement. (*Id*). Helbig then asked whether the government would "state in the agreement that [it] will not actively seek deportation?" (*Id*). Counsel responded that the government "could not agree to recommend against deportation but [it] agreed that [it] would not affirmatively seek deportation – meaning [it] will not alert immigration authorities and ask that you be deported." (*Id*). This flurry of emails occurred on October 15, 2014, prior to Helbig's plea colloquy. Aware of the government's position with regard to her immigration status Helbing, nonetheless, decided to plead guilty and did not withdraw her guilty plea at sentencing. Because Helbig understood the possible immigration consequences of pleading guilty, she cannot establish that she suffered any prejudice.

IV

For the reasons stated herein, I will grant the government's motion to dismiss.

Entered this  13th   day of December, 2016.

                                                                                        _____
                                                                                        NORMAN K. MOON
                                                                                       UNITED STATES DISTRICT JUDGE